60 So.2d 545 (1952)
ADAMS et al.
v.
VIDAL et al.
Supreme Court of Florida, en Banc.
August 5, 1952.
Rehearing Denied October 14, 1952.
*546 Harry H. Martin, Jacksonville, for appellants.
Gray, Waldo & Chandler, Gainesville, for Adolphe L. Vidal and Albert Vidal, as Executors and Trustees under the Last Will and Testament of John W. Vidal, deceased, et al.
Lazonby, Dell, Graham & Mills, Gainesville, for Leonard Clinton Adams, Jr., appellees.
HOBSON, Justice.
This case originated in the Circuit Court in and for Alachua County by the filing of a bill for a declaratory decree. Adolphe L. Vidal and Albert Vidal as Executors and Trustees under the will of John W. Vidal, deceased, and Milton Vidal Hodgson were plaintiffs below and Leonard Clinton Adams, Jr. and the appellants Leonard C. Adams, and Leonard C. Adams as Administrator of the Estate of Irma Vidal Adams, deceased, were defendants.
The bill sought a construction of the will of John W. Vidal, deceased, and to have determined the question whether the surviving minor nephews and niece of the testator, Milton Vidal Hodgson, Leonard Clinton Adams, Jr., and Irma Susan Adams took an absolute fee simple title to undivided interests in certain properties left to the above named Trustees to be held in trust until Leonard Clinton Adams, Jr., should arrive at the age of twenty-one years, he being the youngest of the three cestui que trustent, or whether the title of such devisees and legatees was subject to defeasance or divestment. The Trustees were directed to use the net income from the trust property for the maintenance, care and education of said nephews and niece until the youngest of the beneficiaries and devisees arrived at twenty-one years of age when it is obvious it was the intention of the testator that the trust be terminated.
On May 21, 1945, when Leonard Clinton Adams, Jr., became twenty-one years of age, he, the other nephew and the niece were all living. Thereafter, in March, 1946, the niece, Irma Susan Adams, died intestate without spouse or issue her surviving. She was, however, survived by her mother, Irma Vidal Adams, who died intestate on or about June 27, 1950, and by her father, Leonard C. Adams, who were her sole surviving heirs at law, and her brother, Leonard Clinton Adams, Jr.
The provisions of the will which are pertinent to the determination of whether the two nephews and the niece of the testator took an absolute fee simple title to the subject property on the date Leonard Clinton Adams, Jr., became twenty-one years of age, not subject to defeasance or divestment, are sub-paragraphs (e), (f), (g) and (h) of the Twelfth Article of the will. These sub-paragraphs follow:
"e. In the event Milton Vidal Hodgson, Irma Susan Adams and Leonard Clinton Adams, Jr., are each living at the time Leonard Clinton Adams, Jr. arrives at the age of twenty-one (21) years, and providing that they have each made their home and resided in *547 Gainesville at the old home place as provided herein, then I do hereby give, devise, and bequeath all of said property under Paragraph 12 to Milton Vidal Hodgson, Irma Susan Adams and Leonard Clinton Adams, Jr. in fee simple absolute, share and share alike, or to the survivor of them, subject to conditions named in sub-paragraphs f, g, and h.
"f. In the event of the death of Milton Vidal Hodgson before marriage, or in the event of his marriage and his subsequent demise leaving no widow, children or descendants of children him surviving, then the entire interest held by Milton Vidal Hodgson shall vest in Irma Susan Adams and Leonard Clinton Adams, Jr. equally, or in the survivor of them, and if the said Irma Susan Adams and Leonard Clinton Adams, Jr. have predeceased Milton Vidal Hodgson, then the entire interest held by him shall vest in Adolphe L. Vidal and Albert Vidal, in fee simple absolute, share and share alike, if living, and if deceased, then to his or their heir or heirs.
"g. In the event of the death of Irma Susan Adams before marriage, or in the event of her marriage and her subsequent demise leaving no surviving spouse, children or descendants of children her surviving, then the entire interest held by Irma Susan Adams shall vest in Leonard Clinton Adams, Jr. and Milton Hodgson equally, or in the survivor of them, and if the said Leonard Clinton Adams, Jr. and Milton Vidal Hodgson have predeceased Irma Susan Adams, then the entire interest held by her shall vest in Adolphe L. Vidal and Albert Vidal, in fee simple absolute, share and share alike, if living, and if deceased, then to his or their heir or heirs.
"h. In the event of the death of Leonard Clinton Adams, Jr. before marriage, or in the event of his marriage and his subsequent demise leaving no widow, children or descendants of children him surviving, then the entire interest held by Leonard Clinton Adams, Jr. shall vest in Irma Susan Adams and Milton Vidal Hodgson equally, or in the survivor of them, and if the said Irma Susan Adams and Milton Vidal Hodgson have predeceased Leonard Clinton Adams, Jr., then the entire interest held by him shall vest in Adolphe L. Vidal and Albert Vidal, in fee simple absolute, share and share alike, if living, and if deceased, then to his or their heir or heirs."
It is admitted that the two nephews and the niece of the testator made their home "at the old home place" as required by the terms of the will.
It was determined in and by the declaratory decree entered in the Circuit Court by the Judge thereof that the undivided interests of Milton Vidal Hodgson, Irma Susan Adams and Leonard Clinton Adams, Jr. were subject to being divested "on the death of either [sic] without spouse, children or descendants of children surviving"; that upon the death of Irma Susan Adams, it having been determined that she died "without spouse, children or descendants of children her surviving, the interest held by her in the trust properties inured in equal shares to Milton Vidal Hodgson and Leonard Clinton Adams, Jr. in fee simple absolute and not subject to divestment"; and that the appellants were only entitled to an accounting for the period between the date Leonard Clinton Adams, Jr. arrived at the age of twenty-one years and the date of the death of Irma Susan Adams.
We need not, but as a convenience to the bench and bar will, cite authority for the well established principle that in construing a will the intention of the testator is the controlling factor and it should be gleaned from the four corners of the will unless the language employed by the testator is ambiguous, in which case the testimony of competent witnesses may be received and considered as an aid to the court in its quest for the testator's intent. 28 R.C.L., Wills, Sections 173, 174, pages 211-215, Sections 243-245, page 268-275; 57 Am.Jur., Wills, Sections 1040, 1133, 1136, 1137, pages 674-675, 726-729, 732-737; In re Block's Estate, 143 Fla. 163, 196 So. 410; Marshall v. Hewett, 156 Fla. 645, 24 So.2d 1; *548 Robinson v. Randolph, 21 Fla. 629, 58 Am.Rep. 692. The learned Chancellor declared in his decree, which was entered upon plaintiff's motion for final decree on bill and answer, that it was the testator's primary concern and intention to provide "that the several properties left in trust for his niece and nephews, Milton Vidal Hodgson, Irma Susan Adams and Leonard Clinton Adams, Jr., should pass to them or to their surviving spouses and lineal descendants, or if all three of these named beneficiaries should die without surviving spouses or lineal descendants, then to Adolphe L. Vidal and Albert Vidal or their heirs, but not to the heirs generally of Milton Vidal Hodgson, Irma Susan Adams and Leonard Clinton Adams, Jr."
We have no difficulty in agreeing that such was the testator's intent and dominant purpose.
Counsel for appellants contend the Chancellor was in error in holding that all three beneficiaries at the time Leonard Clinton Adams, Jr. became twenty-one years of age took a defeasible fee simple interest in the trust properties subject to being divested upon the death of any one of said beneficiaries without spouse, children or descendants of children him or her surviving.
It is further their view that the provisions of sub-paragraphs f, g and h of the Twelfth paragraph of the will if valid should be limited in their application to the period of time from testator's death to the date upon which Leonard Clinton Adams, Jr. became twenty-one years of age, to-wit: May 21, 1945. They also assert that the provisions of sub-paragraphs f, g and h of Item Twelve of the will violate the rule against perpetuities and should for such reason be held to be invalid and inoperative.
Appellants' contentions are bottomed upon two conclusions with reference to the testator's intent one of which is, if indeed both are not, directly in conflict with the Chancellor's holding upon the subject of the testator's intent. The first of these erroneous conclusions is that it was the testator's primary intent and purpose to provide the "old home place" as a home for and to maintain, care for and educate his two minor nephews and his minor niece until each had attained his or her majority. The second of these conclusions which we deem to be fallacious is that the testator intended the dying without leaving spouse, children or descendants of children, the devisee surviving, was meant to be effective only if such devisee should die before Leonard Clinton Adams, Jr. became or would have become twenty-one years of age.
Although it was undoubtedly one of the testator's purposes to provide his nephews and niece with a home during the minority of each and to have them live together for such period in the milieu of the family circle, his primary concern and intent with reference to the vesting of title to the properties which he placed in trust was, as the Chancellor decreed, that such property should go to the nephews and niece or to a surviving spouse or spouses, child or children, descendant or descendants of child or children who might be living upon the death of, and survive, the beneficiaries or any one of them, or to the surviving devisee or devisees, otherwise to Adolphe L. Vidal and Albert Vidal and their heirs in fee simple absolute.
We cannot agree that the testator intended sub-paragraphs f, g and h of Item Twelve of the will to apply only in the case of the death of either nephew or the niece, or all three, before the twenty first anniversary of the birth of Leonard Clinton Adams, Jr. The testator expressly stated that should either nephew or his niece die before marriage or without spouse, children or descendants of children him or her surviving, then the interest of the one dying would vest in the survivor or survivors. We apprehend that had he intended such provision to be effective only from the date of his death until the date upon which the youngest beneficiary or devisee became twenty-one years of age he would have said so. Moreover, his use of the words "descendants of children" is indicative of a contrary intent. John W. Vidal executed his will on September 9, 1936, and departed this life on or about November 19, 1936. Leonard Clinton Adams, Jr. became twenty-one *549 years of age on May 21, 1945. If the testator had intended sub-paragraphs f, g and h, supra, to apply only in case of the death of either nephew or the niece before May 21, 1945, he would not have used the expression "descendants of children". Although it might have been possible, it is indeed far-fetched, not to say preposterous, to assume he thought that his niece or either nephew would marry and have a child and such child, who upon May 21, 1945 could not have been more than seven and a fraction years of age, would have married and have become a parent.
Consequently, we hold the view that the testator intended sub-paragraphs f, g and h, supra, to apply both prior and subsequent to May 21, 1945 and that the property which was the subject of the trust should ultimately vest in fee simple absolute in a spouse or spouses, child or children or descendants of children who might survive one or all of the beneficiaries or devisees and if there be no surviving spouse or spouses and in the event of a definite failure of issue upon the death of all three first takers or devisees the entire trust property should finally so vest in Adolphe L. Vidal and Albert Vidal or his or their heirs.
We now give our attention to the remaining pertinent question, whether the provisions of sub-paragraphs f, g and h, supra, violate the rule against perpetuities or, more accurately speaking, the rule against remoteness or remote vesting of an estate or interest therein. This rule, as has ofttimes been stated, is a restraint on the right to create future interests, or in a broad sense a limitation upon the jus disponendi of property. We have defined the rule against perpetuities as being that an estate or interest in order to be good must vest within the period of life or lives in being at testator's death or within twenty-one years thereafter with the term of gestation added in case of posthumous birth. Story v. First National Bank & Trust Co., 115 Fla. 436, 156 So. 101; Van Roy v. Hoover, 96 Fla. 194, 117 So. 887; Porter v. Baynard, 158 Fla. 294, 28 So.2d 890, 170 A.L.R. 747, certiorari denied, Union Trust Co. v. Genau, 67 S.Ct. 1085, 330 U.S. 844, 91 L.Ed. 1289.
The old English, many of the early American and some modern decisions disclose a definite leaning toward the view that since the law favors early vesting of estates, an executory limitation must contain language which expressly declares the testator's intent that the failure of issue take place at the expiration of the life of the first taker, otherwise the expressions "die without issue", "die leaving no issue" or words of similar import should be construed as connoting an indefinite failure of issue. These cases track the common law which favors the presumption of an indefinite failure of issue construction in the absence of an expressed intent to the contrary. This rule of the common law has not been abrogated by statute in this jurisdiction, hence it is in full force and effect. So it is we must determine whether the language used by the testator in the will now before us when considered in the light of the testator's dominant purpose and plan of distribution of his estate, is sufficient to overcome the presumption raised by the common law. See Russ v. Russ, 9 Fla. 105, 106; In re Miller's Estate, 145 Pa. 561, 22 A. 1044; Armstrong v. Douglass, 89 Tenn. 219, 14 S.W. 604, 10 L.R.A. 85; A.L.I. Restatement, Property Sec. 266. If we give an indefinite failure of issue construction to sub-paragraphs f, g and h they must be stricken down and declared void as being violative of the rule against perpetuities or remoteness.
A judicious contemplation of the entire will of John W. Vidal, deceased, of his dominant purpose and plan of distribution, convinces us that he intended the expression "descendants of children him [or her] surviving" to mean descendants of children in esse at the time of the death of each of the first takers or devisees. As we construe the will, the testator had in mind a definite rather than an indefinite failure of issue. The words "him [or her] surviving" when considered in the light of the testator's plan or scheme with reference to the disposition of his estate clearly signify a testamentary intent that the failure of issue must occur at a precise time, i.e. upon the death of each of the first takers or devisees. Indeed, these words alone would *550 ordinarily be sufficient to justify such an interpretation unless a definite failure of issue construction should be clearly inconsistent with the testator's dominant purpose and plan of distribution.
Having determined that the testator intended a definite failure of issue, we are unable to envisage the possibility of a situation developing which could cause the vesting of the subject property in fee simple absolute at a time beyond lives in being and twenty-one years thereafter; nor has counsel for appellants demonstrated that such a situation might possibly arise. Should Milton Vidal Hodgson die without having married and without leaving a spouse, children or descendants of children him surviving and thereafter Leonard Clinton Adams, Jr. should also die without having married and without leaving a spouse, children or descendants of children him surviving, the subject property would vest in fee simple absolute in Adolphe L. Vidal and Albert Vidal or his or their heir or heirs. The fee simple title to the entire property will surely vest absolutely in some one within the period of lives in being and twenty-one years thereafter.
Counsel for both appellants and all of the appellees except Leonard Clinton Adams, Jr., are of the opinion the Chancellor erred in holding that upon the death of Irma the two nephews, Milton and Leonard, Jr., became vested share and share alike with her interest in the trust property in fee simple absolute and not subject to divestment. We are forced to agree that such holding is inconsistent with the testator's intent as declared by the Chancellor, to-wit: "that the several properties left in trust for his niece and nephews Milton Vidal Hodgson, Irma Susan Adams and Leonard Clinton Adams, Jr., should pass to them or to their surviving spouses and lineal descendants, or if all three of these named beneficiaries should die without surviving spouses or lineal descendants, then to Adolphe L. Vidal and Albert Vidal or their heirs, but not to the heirs generally of Milton Vidal Hodgson, Irma Susan Adams and Leonard Clinton Adams, Jr." (Italics supplied).
To hold, as did the Chancellor, that Milton and Leonard, Jr. became vested share and share alike with Irma's interest in the trust property in fee simple absolute not subject to divestment would surely disrupt and defeat the primary intent and object of the testator. Such determination would lead inevitably to the conclusion as a matter of law that the share of Irma's interest which went to each of the nephews would, upon their deaths, descend under the law of descent and distribution to their heirs generally or pass to those devisees who might be named by them in their wills and "the entire interest held by" (Italics supplied) each would not vest in the survivor, or if none "in Adolphe L. Vidal and Albert Vidal in fee simple absolute, share and share alike, if living, and if deceased then to his or their heir or heirs," in the event neither nephew left a spouse, children or descendants of children him surviving. Assuredly, such was not the testator's intent. Moreover, we find nothing in the will to justify even an assumption that the testator had in mind a different plan or scheme of distribution with reference to any portion of the properties that might go to a surviving beneficiary or beneficiaries from that which he had with respect to the original one-third of the trust property which was devised to each cestui que trust.
We do not deem it necessary to discuss other contentions of appellants because we find them to be devoid of merit.
We conclude that the decree from which this appeal was prosecuted should be affirmed except insofar as it held that the interest of Irma, which upon divestment went to Milton and Leonard, Jr., share and share alike, vested in them in fee simple absolute not subject to divestment.
Affirmed in part and reversed in part.
SEBRING, C.J., and TERRELL, CHAPMAN, THOMAS, ROBERTS and MATHEWS, JJ., concur.